### STATE OF CONNECTICUT *v.* KENYATTA WOODS
### (SC 16401)

Sullivan, C. J., and Borden, Palmer, Vertefeuille and Zarella, Js.

Argued May 31—officially released August 28, 2001

---

[11] Katz and Zarella, Js., join in the opinion insofar as it disposes of the defendant's motion for reconsideration en banc.

*Eugene P. Falco*, special public defender, for the appellant (defendant).

*Ronald G. Weller*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *James Dinnan*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

PALMER, J. A jury found the defendant, Kenyatta Woods, guilty of, inter alia, assault in the first degree as an accessory in violation of General Statutes §§ 53a-59 (a) (1)[1] and 53a-8,[2] carrying a pistol without a permit in violation of General Statutes (Rev. to 1995) § 29-35,[3]

[1] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[2] General Statutes § 53a-8 provides: "(a) A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender.

"(b) A person who sells, delivers or provides any firearm, as defined in subdivision (19) of section 53a-3, to another person to engage in conduct which constitutes an offense knowing or under circumstances in which he should know that such other person intends to use such firearm in such conduct shall be criminally liable for such conduct and shall be prosecuted and punished as if he were the principal offender."

[3] General Statutes (Rev. to 1995) § 29-35 provides: "(a) No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. The provisions of this subsec-

and risk of injury to a child in violation of General Statutes (Rev. to 1995) § 53-21 (1), as amended by Public Acts 1995, No. 95-142, § 1.[4] The defendant appealed from the judgment of conviction[5] to the Appellate Court, claiming that the trial court improperly had declined to give a missing witness instruction regarding the state's failure to call a particular witness,[6] in accordance with

tion shall not apply to the carrying of any pistol or revolver by any sheriff, parole officer or peace officer of this state, or sheriff, parole officer or peace officer of any other state while engaged in the pursuit of his official duties, or federal marshal or federal law enforcement agent, or to any member of the armed forces of the United States, as defined by section 27-103, or of this state, as defined by section 27-2, when on duty or going to or from duty, or to any member of any military organization when on parade or when going to or from any place of assembly, or to the transportation of pistols or revolvers as merchandise, or to any person carrying any pistol or revolver while contained in the package in which it was originally wrapped at the time of sale and while carrying the same from the place of sale to the purchaser's residence or place of business, or to any person removing his household goods or effects from one place to another, or to any person while carrying any such pistol or revolver from his place of residence or business to a place or person where or by whom such pistol or revolver is to be repaired or while returning to his place of residence or business after the same has been repaired, or to any person carrying a pistol or revolver in or through the state for the purpose of taking part in competitions or attending any meeting or exhibition of an organized collectors' group if such person is a bona fide resident of the United States having a permit or license to carry any firearm issued by the authority of any other state or subdivision of the United States, or to any person carrying a pistol or revolver to and from a testing range at the request of the issuing authority, or to any person carrying an antique pistol or revolver, as defined in section 29-33.

"(b) The holder of a permit issued pursuant to section 29-28 shall carry such permit on his person while carrying such pistol or revolver."

[4] General Statutes (Rev. to 1995) § 53-21, as amended by Public Acts 1995, No. 95-142, § 1, provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony."

[5] The trial court sentenced the defendant to a total effective sentence of thirteen years imprisonment.

[6] The defendant's claim regarding the failure of the trial court to give a missing witness instruction was the defendant's sole claim on appeal to the

*Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 675, 165 A.2d 598 (1960).[7]

The Appellate Court rejected the defendant's claim, concluding that this court's decision to abandon the *Secondino* rule in criminal cases in *State* v. *Malave*, 250 Conn. 722, 738, 737 A.2d 442 (1999), cert. denied, 528 U.S. 1170, 120 S. Ct. 1195, 145 L. Ed. 2d 1099 (2000), applied retroactively and that, consequently, the defendant was not entitled to a missing witness instruction. *State* v. *Woods*, 58 Conn. App. 816, 818, 754 A.2d 856 (2000). The Appellate Court, therefore, affirmed the trial court's judgment. Id. We granted the defendant's petition for certification to appeal limited to the issue of whether the Appellate Court properly had concluded that our holding in *Malave* abandoning the *Secondino* rule should be applied retroactively. *State* v. *Woods*, 254 Conn. 925, 761 A.2d 758 (2000). This appeal followed.

We conclude that it is unnecessary to decide whether our holding in *Malave* has retrospective applicability because, even if we assume, arguendo, that it does not, the defendant nevertheless has failed to establish that he was entitled to a missing witness instruction under

Appellate Court. See *State* v. *Woods*, 58 Conn. App. 816, 818, 754 A.2d 856 (2000).

[7] "In *Secondino* v. *New Haven Gas Co.*, supra, 147 Conn. 672, this court stated that [t]he failure of a party to produce a witness who is within his power to produce and who would naturally have been produced by him, permits the inference that the evidence of the witness would be unfavorable to the party's cause. . . . Id., 675. This principle, previously articulated by this court in *Ezzo* v. *Geremiah*, 107 Conn. 670, 677, 142 A. 461 (1928), and subsequently approved for use in criminal cases; see *State* v. *Daniels*, 180 Conn. 101, 109, 429 A.2d 813 (1980); *State* v. *Annunziato*, 169 Conn. 517, 536–39, 363 A.2d 1011 (1975); commonly is referred to as the *Secondino* rule or the missing witness rule. Similarly, the jury charge explaining the rule commonly is referred to as the *Secondino* instruction or the missing witness instruction. We use these terms interchangeably throughout this opinion." (Internal quotation marks omitted.) *State* v. *Malave*, 250 Conn. 722, 724 n.2, 737 A.2d 442 (1999), cert. denied, 528 U.S. 1170, 120 S. Ct. 1195, 145 L. Ed. 2d 1099 (2000).

*Secondino.* We, therefore, agree with the Appellate Court that the judgment of the trial court must be affirmed.

The jury reasonably could have found the following facts. On November 23, 1995, at approximately 2 p.m., a group of young men from the Westville Manor housing complex (Westville Manor) in the city of New Haven walked to the nearby Rockview Circle housing complex (Rockview Circle). The group included Tavarie Atkinson, Vincent Clark, Isaac Long, Keith Miller, Keeshawn Moore and Lawrence Washington. When the group arrived at Rockview Circle, Clark purchased some marijuana.

Thereafter, the defendant approached the group and began arguing with Moore. Because there previously had been a conflict between the group from Westville Manor and a second group of men from Rockview Circle, the defendant asked Moore what he and his friends were doing at Rockview Circle. As the defendant was arguing with Moore, Long pulled Moore away. At this point, Atkinson observed the defendant remove something from his waistband. Clark observed that the object that the defendant had removed from his waistband was a handgun. Clark also observed the defendant load the handgun. The members of the Westville Manor group then began to flee. Clark, however, stumbled and fell as he was attempting to flee and, as he was getting up, witnessed the defendant hand the gun to a person identified as Vashawn Lewis. Clark then heard gunshots. While he was running away, Clark heard Atkinson yell that he had been shot. Atkinson eventually arrived home and, thereafter, was transported to the hospital, where he was treated for a gunshot wound to the leg.

At trial, the state's two key witnesses were Atkinson and Clark, both of whom testified that they witnessed the defendant pull out a gun after his argument with

Moore. The state, however, did not call Moore to testify as a witness at trial, and the defendant moved for a missing witness instruction with regard to Moore. The trial court denied the defendant's motion, concluding that there was insufficient evidence regarding Moore's availability to testify at trial and an insufficient showing that Moore was a witness whom the state naturally would have produced unless his testimony would have been adverse to the state.

On appeal to the Appellate Court, the defendant claimed that the trial court improperly had refused to give a *Secondino* charge. Specifically, the defendant claimed that he was entitled to such an instruction because he had established, first, that Moore was available to testify, and second, that Moore was a witness whom the state naturally would have called to testify. In rejecting the defendant's claim, the Appellate Court did not address the issue of whether the defendant had satisfied his burden under *Secondino*, but, rather, concluded that our holding in *State* v. *Malave*, supra, 250 Conn. 738, in which we abandoned the *Secondino* rule, applied retroactively and, therefore, that the defendant was not entitled to a *Secondino* instruction "under any circumstances." *State* v. *Woods*, supra, 58 Conn. App. 818.

On appeal to this court, the defendant contends that our holding in *Malave* should not be applied retroactively, that the trial court abused its discretion in declining to give a missing witness instruction and that the evidentiary impropriety was harmful. Even if we assume, without deciding, that our holding in *Malave* has prospective applicability only, we conclude that the defendant cannot prevail on his claim because he has failed to demonstrate that he was entitled to a missing

witness instruction under the law in effect as of the date of his trial.[8]

Prior to the issuance of our opinion in *Malave,* we had permitted missing witness instructions in certain circumstances. We recently summarized our pre-*Malave* missing witness jurisprudence as follows: "The failure to produce a witness for trial who is available and whom a party would naturally be expected to call warrants an adverse inference instruction against the party who would be expected to call that witness. . . . [T]he two requirements for a *Secondino* adverse inference instruction against a party are that the witness: (1) is available; and (2) could reasonably be expected, by his [or her] relationship to the party or the issues, to have peculiar or superior information material to the case that, if favorable, the party would produce. . . . The party seeking the adverse inference instruction bears the burden of proving both prongs of the test, and the trial court must make a preliminary determination that there is evidence in the record to support these elements. . . .

"Whether a party has established the requirements for a *Secondino* instruction is a factual determination that is committed to the sound discretion of the trial court. . . . We will not disturb that discretion unless the failure to give such an instruction amounts to a clear abuse of that discretion." (Citations omitted; internal

---

[8] We note that the state agrees with the defendant's contention that our holding in *State* v. *Malave,* supra, 250 Conn. 738, has prospective applicability only. Indeed, both the state and the defendant asserted that position in the Appellate Court and in this court. In rejecting the view of the state and the defendant that our holding in *Malave* has prospective applicability only, the Appellate Court relied on an earlier case, *State* v. *Quinones,* 56 Conn. App. 529, 533, 745 A.2d 191 (2000), in which that court had addressed, and rejected, a claim that our holding in *Malave* should be applied prospectively only. *State* v. *Woods,* supra, 58 Conn. App. 818. We intimate no view regarding the propriety of that conclusion.

quotation marks omitted.) *State* v. *Lewis*, 245 Conn. 779, 813–14, 717 A.2d 1140 (1998).

We conclude that the trial court did not abuse its discretion in determining that the defendant had failed to meet his burden of proof with respect to either of the two *Secondino* requirements. With respect to the first such requirement, the only evidence that the defendant adduced regarding Moore's availability was the testimony of Clark, who, in response to defense counsel's question as to whether Moore still resided in New Haven, stated, "I guess so." The trial court reasonably concluded that this equivocal statement reflected nothing more than Clark's surmise as to where Moore might be at the time.[9] Consequently, Clark's testimony, standing alone, was insufficient reasonably to establish Moore's whereabouts. Without more definite and reliable evidence regarding Moore's availability, the trial court was within its discretion in concluding that the defendant had failed to satisfy the availability prong of the *Secondino* rule.[10]

The defendant also failed to meet his burden of showing that Moore's testimony would have been "peculiar

---

[9] The word "guess" is defined as follows: "to form a judgment or opinion of without knowledge or often without means of knowledge . . . to form an opinion of from insufficient, uncertain, or ambiguous evidence or on grounds of probability alone . . . to form an opinion of without evidence . . . [or] to make a random judgment or supposition concerning . . . ." Webster's Third New International Dictionary.

[10] The defendant relies on *State* v. *Daniels*, 180 Conn. 101, 429 A.2d 813 (1980), to support his contention that Clark's testimony was sufficient to establish Moore's availability. In *Daniels*, the defendant, Clarence Daniels, presented an alibi defense in response to being charged with first degree sexual assault, and the state, during its closing argument, commented on Daniels' failure to produce as a witness Barbara Upchurch, one of the individuals who Daniels, himself, had testified was a person who could have corroborated his alibi. Id., 107–108. On appeal to this court, Daniels claimed that the state's comment was improper because the evidence was insufficient to show Upchurch's availability to testify. See id., 110. We rejected Daniels' claim in light of the following colloquy between the state's attorney and Daniels during Daniels' cross-examination: "Q. Who was there when you [returned home]? A. One Barbara Upchurch and her kids. Q. Is she here

or superior" to the testimony of Clark and Atkinson. Id., 814. The defendant adduced no evidence to suggest that Moore, who apparently was fleeing when Atkinson was shot, either saw the defendant in possession of a gun or observed the defendant hand a gun to Lewis. To the contrary, the evidence indicated that Moore had his back turned to the defendant while he was running away, when the defendant gave the gun to Lewis. In the absence of any showing that, under the circumstances, Moore's testimony would have been particularly useful to the state, the defendant cannot satisfy the second prong of *Secondino*. We, therefore, conclude that the trial court did not abuse its discretion in declining to give a *Secondino* charge to the jury.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

today in court? A. No, she isn't. Q. Do you know where she is? A. She's home, I guess." (Internal quotation marks omitted.) Id. The evidence further indicated that Upchurch was in Daniels' bed when he returned home and that he slept in that bed as well. Id., 107, 108.

We disagree with the defendant that our conclusion in *Daniels* mandates a like determination in the present case. In light of the context in which Daniels' testimony was elicited, the trial court in *Daniels* reasonably could have concluded that Daniels, who apparently had had an intimate relationship with Upchurch, knew where Upchurch resided and, furthermore, that Daniels reasonably believed that she was at her residence when the state questioned him about her whereabouts. Indeed, the clear import of Daniels' testimony is that he knew where Upchurch was and how to find her. That testimony was far more definite and credible than Moore's wholly noncommittal response in the present case. Our conclusion in *Daniels*, therefore, is of no benefit to the defendant in the present case.