STATE OF CONNECTICUT *v.* JOSE J. MARTINEZ
(AC 26647)

Schaller, DiPentima and McLachlan, Js.

Argued January 6—officially released May 2, 2006

*Lauren Weisfeld,* assistant public defender, for the appellant (defendant).

*Ronald G. Weller,* senior assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Maxine V. Wilensky,* senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Jose J. Martinez, appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a. On appeal, the defendant claims that (1) the trial court failed to inquire into possible jury taint, (2) he was denied due process of law as a result of prosecutorial misconduct and (3) the court improperly charged the jury. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant and the victim, Hector Pacheco, sold heroin in the area of Poplar Street in New Haven.

On the evening of September 2, 1996, the defendant and the victim had a loud argument concerning the defendant's intention to sell drugs at a location used by the victim.[1] The victim told the defendant that "it wasn't going to happen," and the defendant became upset.

The next morning, at approximately 9:30 a.m., the victim and the defendant had a second argument, and the victim reiterated his position that he would prevent the defendant from seizing his location. The defendant then left the area but returned later that morning. He told the victim, "I told you I'd be back," and drew a handgun from the inside of his pants. The defendant shot the victim and fled from the area while the victim was taken to Yale-New Haven Hospital, where he subsequently died. Thomas Gilchrist, a pathologist in the chief medical examiner's officer, performed an autopsy and determined that a gunshot wound to the chest and abdomen caused the victim's death.

Following an investigation, the police obtained an arrest warrant but were unable to locate the defendant for several years. After shooting the victim, the defendant fled to Philadelphia, Pennsylvania, and used a false name and date of birth to escape discovery. While using the alias "Edwin Acevedo," the defendant was arrested on unrelated charges and placed in custody in 1999.

The defendant's identity eventually was discovered, and he was returned to Connecticut. The defendant was arrested, tried and convicted in connection with the

---

[1] Samuel Cotto, a sergeant in the New Haven police department, testified that he had received special training and had worked with a federal gang task force, investigating gang activity and participating in numerous drug investigations. He explained that, in his experience, drug dealers are territorial and that if one dealer attempted to infringe on another's territory, selling the same drug, "[t]here would be some retaliation in the form of violence."

death of the victim.[2] The court sentenced the defendant to forty years incarceration, suspended after thirty years, and five years probation. This appeal followed.[3] Additional facts will be set forth as necessary.

## I

The defendant first claims that the court failed to inquire into possible jury taint. Specifically, the defen-

[2] The defendant's first trial ended in a mistrial after the jury could not reach a verdict. Voir dire in the second trial commenced on September 15, 2003, and the jury was sworn in on October 7, 2003. The jury reached its guilty verdict on October 16, 2003.

[3] On December 19, 2005, the defendant filed a motion for permission to file a supplemental brief in light of our Supreme Court's decision in *State v. Patterson*, 276 Conn. 452, 886 A.2d 777 (2005). The state opposed the defendant's motion. We denied the defendant's motion without prejudice and allowed the parties to address *Patterson* at oral argument. Following argument, we ordered, sua sponte, the parties to file simultaneous supplemental briefs on the applicability of *Patterson*.

In *Patterson*, our Supreme Court held that the trial court improperly declined to instruct the jury that it should view a witness' testimony with caution in light of the benefits promised to that witness for his cooperation as a jailhouse informant. Id., 464. The court further concluded that the defendant in that case established that the failure to give such an instruction constituted harmful error. Id., 472–73.

In his supplemental brief, the defendant argues that the holding of *Patterson* regarding jury instructions pertaining to the credibility of jailhouse informants should be applied retroactively to his appeal. Specifically, he claims that a new constitutional rule was created in *Patterson* and that this rule should apply to him because his appeal was pending at the time the *Patterson* decision was released. In support, he cites, inter alia, *Griffith v. Kentucky*, 479 U.S. 314, 322–23, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987), and *Johnson v. Warden*, 218 Conn. 791, 797, 591 A.2d 407 (1991). The state counters that the new jury instruction rule announced in *Patterson* is not of constitutional dimension and should not be given retroactive effect. The state further argues that the rules of retroactivity generally apply only when such a claim was made in the appellant's initial brief and during the trial. We agree with the state that the rule announced in *Patterson* is not of constitutional dimension, and therefore we conclude that even if *Patterson* applied retroactively, we would decline to review this unpreserved evidentiary claim.

In *Patterson*, our Supreme Court noted that "*an instructional error relating to general principles of witness credibility is not constitutional in nature. . . .* Consequently, the defendant bears the burden of establishing that the error deprived him of his due process right to a fair trial." (Citation

dant argues that the court failed to investigate two instances of possible juror misconduct, thereby implicating his right to an impartial jury. The first instance occurred when a venireperson indicated that discussions regarding the defendant had occurred among members of the venire panel while awaiting individual voir dire. The second instance transpired when one of the jurors notified the court clerk that some of the other members of the jury had commented, prior to the jury

omitted; emphasis added.) *State* v. *Patterson*, supra, 276 Conn. 471–72. We are mindful of our decisions in *State* v. *Walker*, 67 Conn. App. 120, 123, 786 A.2d 1116 (2001), cert. denied, 259 Conn. 926, 793 A.2d 252 (2002); *State* v. *Young*, 57 Conn. App. 566, 572, 750 A.2d 482 (2000), rev'd in part on other grounds, 258 Conn. 79, 779 A.2d 112 (2001); *State* v. *Bailey*, 56 Conn. App. 760, 762, 746 A.2d 194 (2000), cert. denied, 264 Conn. 901, 823 A.2d 1219 (2003); and *State* v. *Quinones*, 56 Conn. App. 529, 533, 745 A.2d 191 (2000), in which we held that the rule set forth in *State* v. *Malave*, 250 Conn. 722, 738–40, 737 A.2d 442 (1999) (en banc), cert. denied, 528 U.S. 1170, 120 S. Ct. 1195, 145 L. Ed. 2d 1099 (2000), abandoning in the criminal context the missing witness doctrine of *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 675, 165 A.2d 598 (1960), applied retroactively. Nevertheless, this case presents a situation that is distinguishable from our prior decisions.

First, we note that our Supreme Court has never resolved the question of whether *Malave* should apply retroactively. Although that court granted the state's petition for certification to appeal on that issue; *State* v. *Young*, 253 Conn. 922, 922–23, 754 A.2d 799 (2000); it decided the case on other grounds. See *State* v. *Young*, 258 Conn. 79, 83–84, 779 A.2d 112 (2001); see also *State* v. *Woods*, 257 Conn. 761, 769 n.8, 778 A.2d 933 (2001) ("[w]e intimate no view regarding the propriety of that conclusion [regarding the retroactive application of *Malave*]"). Second, this case is distinguishable from *Patterson* because the defendant in *Patterson* specifically requested an instruction on jailhouse informant credibility. *State* v. *Patterson*, supra, 276 Conn. 465. Finally, in the cases mentioned that applied *Malave* retroactively, the issue of a *Secondino* instruction was before the trial court. In the present case, the defendant never raised the issue of a charge on the credibility of jailhouse informants to the trial court. To allow the defendant to raise this issue for the first time on appeal would produce a substantially inequitable result. It is well established that "to review claims raised for the first time on appeal would be nothing more than a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) *State* v. *Charles*, 56 Conn. App. 722, 729, 745 A.2d 842, cert. denied, 252 Conn. 954, 749 A.2d 1203 (2000). We therefore decline to review his claim, made for the first time on appeal regarding a jury instruction pertaining to the credibility of jailhouse informants.

charge, on the defendant's outburst that had taken place during the testimony of one of the state's witnesses. We do not agree with either of the defendant's claims.

As an initial matter, we set forth the general legal principles relevant to this issue. "Jury impartiality is a core requirement of the right to trial by jury guaranteed by the constitution [of Connecticut, article first, § 8, and by the sixth amendment to the United States constitution] . . . . [T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors. . . . It is well established, however, that not every incident of juror misconduct requires a new trial. . . . [D]ue process seeks to assure a defendant a fair trial, not a perfect one. . . . The question is whether . . . the misconduct has prejudiced the defendant to the extent that he has not received a fair trial. . . . The defendant has been prejudiced if the misbehavior is such to make it probable that the juror's mind was influenced by it so as to render him or her an unfair and prejudicial juror." (Internal quotation marks omitted.) *State* v. *West*, 274 Conn. 605, 647, 877 A.2d 787, cert. denied, 546 U.S. 1049, 126 S. Ct. 775, 163 L. Ed. 2d 601 (2005); see also *State* v. *Sinvil*, 90 Conn. App. 226, 240, 876 A.2d 1237, cert. denied, 275 Conn. 924, 883 A.2d 1251 (2005).

A discussion of the seminal case of *State* v. *Brown*, 235 Conn. 502, 668 A.2d 1288 (1995) (en banc), is also appropriate. In *Brown*, the trial court received an anonymous note, after the verdict had been returned, indicating that the writer had learned that one of the jurors commented that she had overheard the sheriffs "betting that the defendant would be found guilty because he was black and from New York." (Internal quotation marks omitted.) Id., 520. Our Supreme Court concluded that the trial court abused its discretion by failing to conduct an inquiry into the allegations contained in the note. Id., 522–26. Furthermore, under the auspices of

its inherent supervisory power over the administration of justice, the court held that "henceforth a trial court must conduct a preliminary inquiry, on the record, whenever it is presented with any allegations of jury misconduct in a criminal case, regardless of whether an inquiry is requested by counsel. Although the form and scope of such an inquiry lie within a trial court's discretion, the court must conduct some type of inquiry in response to allegations of jury misconduct. That form and scope may vary from a preliminary inquiry of counsel, at one end of the spectrum, to a full evidentiary hearing at the other end of the spectrum, and, of course, all points in between. Whether a preliminary inquiry of counsel, or some other limited form of proceeding, will lead to further, more extensive, proceedings will depend on what is disclosed during the initial limited proceedings and on the exercise of the trial court's sound discretion with respect thereto." Id., 526.

Our Supreme Court further instructed that the form and scope of the hearing should be based on a consideration of several factors. "In future cases, a trial court may find it helpful to be guided by the following factors in exercising its discretion as to the form and scope of an inquiry into allegations of jury misconduct. By analogy to the law of procedural due process, the court should consider the following: [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (Internal quotation marks omitted.) Id., 529–30.

With these principles in mind, we turn to the defendant's specific arguments.

## A

The defendant first argues that the court improperly failed to conduct an investigation when a venireperson indicated that discussions regarding the defendant had occurred among members of the venire panel while awaiting individual voir dire. Specifically, the defendant claims that the court should have recalled for further inquiry an individual who had been selected as a member of the jury. The defendant concedes that he failed to preserve his claim for our review and now seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[4] or the plain error doctrine. See Practice Book § 60-5.[5] We will review the defendant's claim because the record is adequate for our review and his claim is of constitutional magnitude. We conclude, however, that the defendant has failed to satisfy the third prong of *Golding*.

The following additional facts are necessary for our discussion. Voir dire commenced on September 15, 2003. Prior to September 22, 2003, one juror had been

---

[4] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Jordan*, 64 Conn. App. 143, 150, 781 A.2d 310 (2001); see also *State* v. *Estrella*, 277 Conn. 458, 468 n.15, 893 A.2d 348 (2006).

[5] "The plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Smith*, 275 Conn. 205, 240, 881 A.2d 160 (2005). Plain error review is not warranted with regard to this issue.

selected.[6] Two of the first three members of the venire were excused by the court, and the state exercised a preemptory challenge with regard to the other venire member. The next venireperson, H, was selected as a juror. The next two venirepersons were excused by the court.

J then was questioned during voir dire. The state asked if refraining from discussing the details of the case would pose a problem for her. J replied, "I don't know. I mean, we've all been discussing it in the room next door and several people called home already. I mean it's—it's—I think the—if you could hear the conversation in the room next door, you'd be rather upset." She further explained that, "[w]ell, several people called home to say they were on a murder trial and, ah, I think in my own case, I don't think I can—I'm rather high strung. I don't think I can really wrap myself around a murder trial." Upon further inquiry by the state, J responded: "Well, we discussed where this young man had been since, what is it, 1997, and we were theorizing about all—I mean, I didn't—I don't know whether we were supposed to be talking to each other or what. I don't know." She stated that the conversation included theories regarding "motive, drugs, all that kind of thing came up." Finally, she said: "I mean, I don't know

[6] We need review only the events of September 22, 2003, as a result of our "one day, one jury system." "Prospective jurors generally serve only one day unless they are called back to complete voir dire or are selected for a jury. General Statutes § 51-238a provides: Length of term of service as juror. The length of the term of service for jurors shall be one day except that (1) if a juror is impaneled on a jury trial which lasts more than one day, then the term of service shall be the length of that trial or (2) if a juror is administered the voir dire oath and examination of such juror is not completed during that day, then the term of service shall be through the completion of the examination, if the juror is not selected, or the length of the jury trial, if the juror is selected, or (3) if the court otherwise orders, then the term of service shall be such number of days as the court may order." (Internal quotation marks omitted.) *State* v. *Robinson*, 237 Conn. 238, 252 n.14, 676 A.2d 384 (1996).

whether you heard us all laughing, but I said, are we supposed to be talking like this, and maybe the instructions to prospective jurors aren't very clear as to what kind of discussions should be going on. I honestly think—I said—we were sitting in there, if they had closed circuit television here, they'd be shocked."

Defense counsel asked J if anyone speculated as to where the defendant had been since 1996, and she replied, "[w]ell, we thought he might have been in juvenile detention. The court refused the parties' request to remove J for cause or to recall her for further questioning and indicated that any inquiry as to whether the panel had been contaminated would be done through voir dire. The state then exercised a peremptory challenge and excused J.

The defendant argues that the court was obligated to conduct an investigation into possible juror misconduct pursuant to *Brown*. The state counters that a *Brown* hearing was not required because any contamination of the venire panel occurred before individual voir dire and that the individual questioning during voir dire ensured a fair and impartial jury. We agree with the state.

In *State* v. *Ross*, 269 Conn. 213, 246, 849 A.2d 648 (2004) (en banc), our Supreme Court concluded that "*Brown* does not support the proposition that a trial court is required to hold an independent inquiry whenever an allegation has been made that a venire panel has been tainted before voir dire." The court explained that the reason for this conclusion was the opportunity to question individual venirepersons during voir dire. "*When an allegation is made . . . that a venire panel has been tainted, voir dire itself provides a means to uncover bias.*" (Emphasis added.) Id., 248; see also *State* v. *Vazquez*, 87 Conn. App. 792, 805–806, 867 A.2d 15, cert. denied, 273 Conn. 934, 875 A.2d 544 (2005); *State*

v. *Malave*, 47 Conn. App. 597, 606, 707 A.2d 307 (1998), aff'd, 250 Conn. 722, 737 A.2d 442 (1999) (en banc), cert. denied, 528 U.S. 1170, 120 S. Ct. 1195, 145 L. Ed. 2d 1099 (2000).

In the present case, juror H was accepted prior to the revelation of the discussions among the venire panel. Nevertheless, we conclude that the court was not obligated to hold an independent inquiry or to recall H for further questioning. During voir dire, H indicated that he understood that the defendant was presumed innocent until proven guilty, did not entertain any thought that the defendant "must have done something" because he was sitting in the courtroom, acknowledged that police officers sometimes arrest the wrong individual and would not hold the defendant's silence against him. Moreover, H stated that he would not hesitate to find the defendant not guilty if the state failed to meet its burden of proof, that he would be impartial to both the state and the defendant, would follow the instructions of the court and would keep an open mind and listen to all of the evidence before reaching any kind of conclusion.

It is clear that H was questioned extensively regarding any possible biases, and his responses failed to reveal any bias. In light of the controlling precedent, we conclude that the court was not obligated to conduct an inquiry on the record with respect to a possible taint of the venire panel from which juror H was selected. Furthermore, as a result of the voir dire questioning, H indicated that he was not biased or partial. See, e.g., *State* v. *Ziel*, 197 Conn. 60, 66–67, 495 A.2d 1050 (1985). We conclude, therefore, that the defendant has failed to demonstrate that a constitutional violation clearly exists.

B

The defendant next argues that the court failed to conduct an investigation after one of the jurors notified

the court clerk that some of the other members of the jury had commented, prior to the jury charge, on the defendant's outburst during testimony from one of the state's witnesses. We review this unpreserved claim under *Golding* but conclude that the defendant has failed to satisfy the third prong of *Golding*.

The following additional facts are relevant to our discussion. During the trial, the state called Martel Arrington as a witness. Arrington met the defendant in prison in early 2002. Arrington indicated that he had a "bond" of friendship with the defendant. Arrington testified that the defendant had told him that he was a drug dealer in New Haven and that he had shot somebody. Arrington explained that the defendant had told him that "he used to sell drugs in that area and that some kid he used to have a problem with was telling him that he can't sell in that area."

At this point, the defendant interrupted the proceedings and exclaimed: "That's lying. That is lying. This is lying. Why don't you tell the jury I already went to trial? They couldn't find me guilty. I already went to trial. Tell the jury I already went to trial and they didn't find me guilty. Tell that to the jury. I already went to trial and they didn't find me guilty. Now you want to bring people telling me lying here. Say that to the jury. They're playing with my life. The prosecutor should be in court. That's the one that should be. That's what they doing. I'm not going. Go ahead. I'm not going. Just tell the truth about corruption. That's what it is, corruption."

The court instructed the jury to proceed to the jury room and then warned the defendant that any further outburst would result in his exclusion from the courtroom. Following a recess of twenty minutes, the questioning of Arrington resumed and was completed without further incident.

After the conclusion of closing arguments, but prior to the jury charge, one of the jurors spoke to the court clerk and indicated that several of the other jurors had commented on the defendant's outburst. The court stated on the record, outside of the presence of the jury, that it had "indicated to counsel [that it would] tell the jury [that] if they wish to have any of what the defendant said during the outburst read to them, [it would] have the [court] reporter read it to them." The state requested an instruction that the outburst was not evidence, and the court suggested simply informing the jury that the outburst was not to be considered and that therefore it was not necessary to have it read back to them. Defense counsel asked that the outburst be read to the jury with a cautionary instruction and the state acquiesced. The court did not discuss the incident with the jury, nor did the jurors ever request that the outburst be read back to them.

The defendant argues that the jury engaged in premature deliberations by discussing his outburst before being charged by the court. The defendant further contends that the court was obligated, pursuant to *State* v. *Brown*, supra, 235 Conn. 502, to conduct an investigation on the record. The state counters that the record is inadequate for our review, the court conducted a sufficient *Brown* hearing and the defendant failed to demonstrate any prejudice. We agree with the state's second argument.

Of course, "[i]t is improper for jurors to discuss a case among themselves until all the evidence has been presented . . . and the case has been submitted to them after final instructions by the trial court. . . . When jurors . . . discuss the case among themselves, either as a whole or in groups, [prior to formal deliberations they] . . . give premature consideration to the evidence presented—consideration unaided by the final instructions of the trial court as to the law to be applied

to the facts in the case." (Citations omitted; internal quotation marks omitted.) *State* v. *Newsome*, 238 Conn. 588, 627, 682 A.2d 972 (1996). The court, therefore, was presented with an allegation of juror misconduct. As such, the holding of *Brown* applies, and the court was obligated to conduct a preliminary hearing on the record. *State* v. *Brown*, supra, 235 Conn. 526.

In *Brown*, however, our Supreme Court indicated that in the appropriate circumstances, "a preliminary inquiry of counsel" may be all that is necessary and that the form and scope of the inquiry was within the court's discretion. Id. Furthermore, the court recognized that "the trial judge has a superior opportunity to assess the proceedings over which he or she personally has presided . . . and thus is in a superior position to evaluate the credibility of allegations of jury misconduct, whatever their source. *There may well be cases, therefore, in which a trial court will rightfully be persuaded, solely on the basis of the allegations before it and the preliminary inquiry of counsel on the record, that such allegations lack any merit. In such cases, a defendant's constitutional rights may not be violated by the trial court's failure to hold an evidentiary hearing, in the absence of a timely request by counsel.*" (Citations omitted; emphasis added.) Id., 527–28.

In the present case, after learning of the alleged misconduct, the court, on the record, alerted both parties and allowed them to respond. The court offered to have the outburst, upon request, read back to the jury with a cautionary instruction, and both parties agreed to this course of action.[7] This offer resolved the situation to

---

[7] We note that in its charge to the jury, the court instructed that "the following matters are not evidence, and you are not to consider them in deciding what the facts are. Arguments of counsel. Argument is argument, it is not evidence. Questions to which objections were sustained, and therefore, there was no answer. Forget the question, the question is not evidence." The court further charged the jury as follows: "I point out to you also that the outburst by the defendant and what he may have said, if you wish to

the mutual satisfaction of the parties. See *State* v. *Alston*, 272 Conn. 432, 453, 862 A.2d 817 (2005). Simply put, a more extensive inquiry was not required under these facts and circumstances. We conclude, therefore, that the court did not abuse its discretion by limiting its investigation of alleged juror misconduct to a preliminary inquiry of counsel on the record.[8]

## II

The defendant next claims that he was denied due process of law as a result of prosecutorial misconduct.[9]

---

have what he said read back to you, that can be done if you request it, *but I also point out to you that that is not evidence.*" (Emphasis added.)

[8] We also agree with the state's third argument, which is that the defendant failed to demonstrate prejudice. "[D]ue process seeks to assure a defendant a fair trial, not a perfect one. . . . [T]he constitution does not require a new trial every time a juror has been placed in a potentially compromising situation . . . [because] it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. . . . The question is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial. . . . The defendant has been prejudiced if the misbehavior is such to make it probable that the juror's mind was influenced by it so as to render him or her an unfair and prejudicial juror. . . . We have previously held that, in cases where the trial court is directly implicated in juror misconduct, the state bears the burden of proving that misconduct was harmless error. . . . *Where, however, the trial court was in no way responsible for the juror misconduct . . . we have repeatedly held that a defendant who offers proof of juror misconduct bears the burden of proving that actual prejudice resulted from that misconduct.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *State* v. *Rhodes*, 248 Conn. 39, 47, 726 A.2d 513 (1999); *State* v. *Johnson*, 82 Conn. App. 777, 796, 848 A.2d 526 (2004). We agree with the state that the defendant failed to make any such showing of prejudice either in his brief or at oral argument before this court. See *State* v. *Alston*, supra, 272 Conn. 454.

[9] The defendant argues that once a reviewing court concludes that a prosecutor engaged in misconduct, the fact that the defendant failed to object should not be considered. The defendant further contends that if a reviewing court determines that misconduct has occurred, the burden should fall on the state to prove harmlessness, rather than on the defendant to prove harm. These arguments run contrary to the holdings of our Supreme Court. See, e.g., *State* v. *Skakel*, 276 Conn. 633, 744, 888 A.2d 985 (2006) (failure to object remains factor for court to consider); *State* v. *Samuels*, 273 Conn. 541, 561, 871 A.2d 1005 (2005) (defendant must prove denial of due process). As the intermediate appellate court of this state, it is not

The defendant specifically argues that misconduct occurred both during cross-examination and closing argument. We conclude that the defendant was not deprived of his due process right to a fair trial.

At the outset, we note that the defendant concedes that some of the instances of alleged misconduct were not preserved for our review. He properly contends that the entire claim is reviewable nonetheless. "We review the defendant's unpreserved claims in accordance with our Supreme Court's . . . decision in *State* v. *Stevenson*, 269 Conn. 563, 849 A.2d 626 (2004). [T]he touchstone for appellate review of claims of prosecutorial misconduct is a determination of whether the defendant was deprived of his right to a fair trial, and this determination must involve the application of the factors set out by [our Supreme Court] in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). . . .

"Regardless of whether the defendant has objected to an incident of misconduct, a reviewing court must apply the *Williams* factors to the entire trial, because there is no way to determine whether the defendant was deprived of his right to a fair trial unless the misconduct is viewed in light of the entire trial. . . . Because the inquiry must involve the entire trial, all incidents of misconduct must be viewed in relation to one another and within the context of the entire trial. The object of inquiry before a reviewing court in claims involving prosecutorial misconduct, therefore, is always and only the fairness of the entire trial, and not the specific incidents of misconduct themselves." (Citation omitted; internal quotation marks omitted.) *State* v. *Blackwell*, 86 Conn. App. 409, 417–18, 861 A.2d 548 (2004), cert. denied, 272 Conn. 922, 867 A.2d 838 (2005).

"[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of

within our province to overrule our Supreme Court. *State* v. *Henry*, 76 Conn. App. 515, 551, 820 A.2d 1076, cert. denied, 264 Conn. 908, 826 A.2d 178 (2003).

the trial, and not the culpability of the prosecutor. . . . In analyzing claims of prosecutorial misconduct, we engage in a two step analytical process. The two steps are separate and distinct: (1) whether misconduct occurred in the first instance; and (2) whether that misconduct deprived a defendant of his due process right to a fair trial. Put differently, misconduct is misconduct, regardless of its ultimate effect on the fairness of the trial; whether that misconduct caused or contributed to a due process violation is a separate and distinct question that may only be resolved in the context of the entire trial, an inquiry that in the present case necessarily will require evaluation of the defendant's other misconduct claims. . . . We also note that in order to prove prosecutorial misconduct, the defendant must demonstrate substantial prejudice by establishing that the trial as a whole was fundamentally unfair and that the misconduct so infected the trial with unfairness as to make the conviction a denial of due process. . . .

"[I]t is not the prosecutor's conduct alone that guides our inquiry, but, rather, the fairness of the trial as a whole. . . . We are mindful throughout this inquiry, however, of the unique responsibilities of the prosecutor in our judicial system. A prosecutor is not only an officer of the court, like every other attorney, but is also a high public officer, representing the people of the State, who seek impartial justice for the guilty as much as for the innocent. . . . By reason of his [or her] office, [the prosecutor] usually exercises great influence upon jurors. [The prosecutor's] conduct and language in the trial of cases in which human life or liberty are at stake should be forceful, but fair, because he [or she] represents the public interest, which demands no victim and asks no conviction through the aid of passion, prejudice or resentment. If the accused be guilty, he [or she] should none the less be convicted only after a fair trial, conducted strictly according to

the sound and well-established rules which the laws prescribe." (Citations omitted; internal quotation marks omitted.) *State* v. *Boyd*, 89 Conn. App. 1, 28–29, 872 A.2d 477, cert. denied, 275 Conn. 921, 883 A.2d 1247 (2005). We now address the defendant's specific arguments.

## A

The defendant argues that during the cross-examination of his sister, Glenda Martinez, the prosecutor improperly commented about the strength of the defendant's case. Although we agree with the defendant that the comment was improper, we conclude that he was not denied a fair trial.

The defendant called Glenda Martinez as his first witness. She denied that she had threatened one of the state's witnesses. During cross-examination, she indicated that she came from a close-knit family and that she did not want to see her brother, the defendant, hurt. Glenda Martinez testified that her mother and sister had been present every day of the defendant's trial and that she had spoken with them about it. The prosecutor then asked, "[a]nd they've told you it may not be going well for your brother, right?" Defense counsel immediately objected and moved for a mistrial. The court sustained the objection, twice instructed the jury to disregard the question and reminded the jury that questions posed were not evidence. The court then denied the defendant's motion for a mistrial.

"The prosecutor may not express his own opinion, directly or indirectly . . . as to the guilt of the defendant. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony, and are particularly difficult for the jury to ignore because of the prosecutor's special position. . . . Moreover, because the jury is aware that the prosecutor has prepared and presented the case and consequently, may

have access to matters not in evidence . . . it is likely to infer that such matters precipitated the personal opinions." (Internal quotation marks omitted.) *State* v. *Nixon*, 91 Conn. App. 333, 342, 880 A.2d 199, cert. denied, 276 Conn. 911, 886 A.2d 426 (2005). Similarly, in *State* v. *Brown*, 71 Conn. App. 121, 800 A.2d 674, cert. denied, 261 Conn. 940, 808 A.2d 1133 (2002), we stated that "[t]he rule is clear that it is improper for the prosecutor to state his personal opinions about the case to the jury. *State* v. *Dillard*, 66 Conn. App. 238, 252–53, 784 A.2d 387, cert. denied, 258 Conn. 943, 786 A.2d 431 (2001); see also Rules of Professional Conduct 3.4 ([a] lawyer shall not . . . [5] state a personal opinion as to the justness of a cause, the credibility of a witness . . . or the guilt or innocence of an accused). . . . [This type of statement creates] the risk that the jury's attention will be diverted away from its own opinion about the strength of the evidence and toward the prosecutor's view, and invite the jury to decide the case on the basis of passion and prejudice, rather than on the evidence. See *State* v. *Dillard*, supra, 252–53; see also Rules of Professional Conduct 3.8, commentary (A prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it specific obligations to see that the defendant is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence.)." (Internal quotation marks omitted.) *State* v. *Brown*, supra, 134–35.

In the present case, the prosecutor's question of Glenda Martinez regarding whether she had heard that the defendant's case was "not . . . going well" diverted the jury's attention from its own view about the strength of the evidence. This question essentially amounted to the prosecutor offering a personal opinion about the case, which is improper. See *State* v. *Brown*, supra, 71 Conn. App. 134.

Having concluded that misconduct occurred, we must now turn to the second step of our analysis, namely, whether the misconduct deprived the defendant of a fair trial. "In doing so, we will consider the factors listed by our Supreme Court in *State* v. *Williams,* supra, 204 Conn. 540. . . . These factors include: (1) the extent to which the misconduct was invited by defense conduct or argument; (2) the severity of the misconduct; (3) the frequency of the misconduct; (4) the centrality of the misconduct to the critical issues in the case; (5) the strength of the curative measures adopted; and (6) the strength of the state's case." (Citation omitted; internal quotation marks omitted.) *State* v. *Boyd,* supra, 89 Conn. App. 44.

We acknowledge that the prosecutor's comment was not invited by the defense counsel. Our review of the record indicates that the isolated instance of misconduct was neither severe nor directed at a critical issue in the case. Glenda Martinez' testimony was used to attack the credibility of one of the state's witnesses whose credibility had been challenged severely during her cross-examination. Moreover, following the defendant's *immediate objection,* the court issued *two curative instructions* and reminded the jury that questions by counsel were not evidence for the jury's consideration. In *State* v. *Jarrett,* 82 Conn. App. 489, 845 A.2d 476, cert. denied, 269 Conn. 911, 852 A.2d 741 (2004), we stated that "[a]lthough certain remarks made by the prosecutor, from hindsight, may be deemed imprudent, such isolated and brief episodes as occurred here fail to implicate the denial of the defendant's constitutional right to due process. . . . Indeed, the infrequency of the misconduct limits its effect." (Citation omitted; internal quotation marks omitted.) Id., 505. We conclude, therefore, that the prosecutor's single improper question did not deprive the defendant of his due process right to a fair trial.

## B

The defendant next argues that the prosecutor improperly asked him to comment on the veracity of Glenda Martinez. Specifically, the defendant contends that the prosecutor committed misconduct when she asked him, during cross-examination, if Glenda Martinez was protective of him. He alleges that this question violated *State* v. *Singh*, 259 Conn. 693, 793 A.2d 226 (2002). In *Singh*, our Supreme Court held that it was improper to ask one witness to comment on the veracity of another witness' testimony. Id., 712.

We disagree with the defendant's characterization of the question. In our view, the prosecutor properly used cross-examination as a means to uncover the potential bias of the defendant's sister. See *State* v. *Grant*, 89 Conn. App. 635, 645, 874 A.2d 330 (important function of cross-examination is to elicit bias), cert. denied, 275 Conn. 903, 882 A.2d 678 (2005); Conn. Code Evid. § 6-5. We conclude, therefore, that this question by the prosecutor was proper.

## C

The defendant next argues that the prosecutor engaged in several instances of misconduct during closing argument. We disagree.

Our Supreme Court previously has recognized that "prosecutorial misconduct of a constitutional magnitude can occur in the course of closing arguments. . . . In determining whether such misconduct has occurred, the reviewing court must give due deference to the fact that [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's

case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom. . . . Moreover, [i]t does not follow . . . that every use of rhetorical language or device [by the prosecutor] is improper. . . . The occasional use of rhetorical devices is simply fair argument. . . . Nevertheless, the prosecutor has a heightened duty to avoid argument that strays from the evidence or diverts the jury's attention from the facts of the case." (Citation omitted; internal quotation marks omitted.) *State* v. *Thompson*, 266 Conn. 440, 458, 832 A.2d 626 (2003).

1

The defendant claims that the prosecutor improperly commented on Glenda Martinez' testimony during closing argument. The prosecutor made the following statement to the jury: "Let's get to [Glenda Martinez]. You heard her say she loved [the defendant] and, naturally so, that she would protect him. She knew what was going on in this courtroom, she discussed it every day with her mother and sister, she knew what was happening here and, recall the defendant's own testimony, that they met Friday night for thirty minutes and then she came in here and testified Tuesday morning."

This statement by the prosecutor was proper comment on the evidence adduced at trial. "[I]t is not improper for the prosecutor to comment upon the evidence presented at trial and to argue the inferences that the jurors might draw therefrom . . . ." (Internal quotation marks omitted.) *State* v. *Blackwell*, supra, 86 Conn. App. 419. The defendant's claim to the contrary is without merit.

2

The defendant next argues that the prosecutor improperly disputed the claim that one of the state's

witnesses, Juan Torres, had been rewarded for his willingness to testify against the defendant. During the trial, Torres indicated that he was a convicted felon and had been promised credit for testifying against the defendant, but he did not receive such credit. Defense counsel vigorously cross-examined Torres on this issue. Torres eventually admitted that, in exchange for his testimony against the defendant, he received a reduced sentence.

During his closing argument, defense counsel stated: "We come to Juan Torres. Juan Torres came in here and wanted you to believe that he got no consideration whatsoever for his testimony against [the defendant], and I believe we demonstrated it fairly well that that was a lie. That he was facing 280 years in federal prison, he was facing $14 million in fines and that he specifically agreed in the proffer agreement to testify against [the defendant] in his trial, and what happened to Mr. Torres as a result of that? He didn't do 280 years. He didn't do the ten to twelve years that his guideline numbers called for. He served five years. Sixty months. He served his sentence. He's a free man. And he's a free man because he agreed to testify against [the defendant]."

During rebuttal argument, the state responded to the defendant's blistering comments. "Juan Torres. You heard a lot about Juan Torres and how much time he was facing. Pursuant to the guidelines, an agreement he entered into with the federal government, his sentence was to between 105 and 108 months, and he served only five years. *Well, here is the deal.* [Defense counsel] submitted to you that he was a free man because he was willing to give testimony against the defendant. He's a free man today because he served his time. Period." (Emphasis added.) The defendant claims that the use of the phrase "here is the deal" was improper because it was a form of unsworn testimony.

We disagree with the defendant's contention. In reviewing the entire argument, and placing the chal-

lenged comment in context, we are persuaded that the prosecutor was not referring to a specific agreement that Torres had arranged, but was using a rhetorical device to explain Torres' situation and to counter defense counsel's attack. "[I]t does not follow . . . that every use of rhetorical language or device is improper. . . . The occasional use of rhetorical devices is simply fair argument. . . . We must give the jur[ors] the credit of being able to differentiate between argument on the evidence and attempts to persuade them to draw inferences in the state's favor, on one hand, and improper unsworn testimony, with the suggestion of secret knowledge, on the other hand." (Citation omitted; internal quotation marks omitted.) *State* v. *Mulero*, 91 Conn. App. 509, 519, 881 A.2d 1039 (2005), cert. denied, 277 Conn. 912, 895 A.2d 792 (2006). Moreover, we have indicated that "[a] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." (Internal quotation marks omitted.) *State* v. *Antonio A.*, 90 Conn. App. 286, 301, 878 A.2d 358, cert. denied, 275 Conn. 926, 883 A.2d 1246 (2005), cert. denied, 546 U.S. 1189, 126 S. Ct. 1373, 164 L. Ed. 2d 81 (2006). We conclude, therefore, that the prosecutor's use of the phrase "here is the deal" did not constitute misconduct under these facts and circumstances.

3

The defendant next claims that the prosecutor improperly misled the jury by suggesting that the jailhouse informants who had testified were trustworthy because there was no evidence that the case had been reported in the media and, therefore, the informants could have known the details of the case only if the defendant had told them. The defendant argues that this statement was contrary to the evidence because

one of the witnesses, Lennie Ramos, testified that he had heard on the news that the defendant was wanted in connection with a homicide. The defendant further notes that the prosecutor made reference to this fact in her rebuttal argument to the jury when she stated: "Lennie Ramos. They were friends. He knew [the defendant] as Machote. He hears the news report. The defendant says to him, something happened. Lennie Ramos would have no way of knowing that, again, unless [the defendant] told him."

To be sure, it is clear that "a prosecutor must not comment on evidence that is not part of the record, nor is he to comment unfairly on the evidence adduced at trial so as to mislead the jury." (Internal quotation marks omitted.) *State* v. *Johnson*, 82 Conn. App. 777, 793, 848 A.2d 526 (2004). A review of the record, however, reveals the fatal flaw in the defendant's argument—the prosecutor did not mislead the jury in her comments. The prosecutor's comment that there was no evidence regarding the media was made in reference to the testimony of another witness, Arrington. Arrington never mentioned the media during *his* testimony. Accordingly, this claim is without merit.

4

The defendant's final prosecutorial misconduct claim is that it was improper for the prosecutor to argue to the jury that he "fled from New Haven shortly after the shooting . . . ." During his testimony, the defendant acknowledged that he left New Haven for Philadelphia and assumed the name "Edwin Acevedo" after the shooting had occurred. The prosecutor's remark, therefore, was nothing more than fair comment on the evidence and did not constitute misconduct. See *State* v. *Blackwell*, supra, 86 Conn. App. 419–20.

III

The defendant's final claim is that the court improperly charged the jury. The defendant specifically chal-

lenges the court's instruction on consciousness of guilt and reasonable doubt. We are not persuaded by the defendant's arguments.

"We begin by setting forth the applicable standard of review. The principal function of a jury charge is to assist the jury in applying the law correctly to the facts which [it] might find to be established . . . . When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety . . . and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party . . . . In this inquiry we focus on the substance of the charge rather than the form of what was said not only in light of the entire charge, but also within the context of the entire trial." (Internal quotation marks omitted.) *State* v. *Carpenter*, 275 Conn. 785, 864–65, 882 A.2d 604 (2005), cert. denied, 547 U.S. 1025, 126 S. Ct. 1578, 164 L. Ed. 2d 309 (2006); *State* v. *Williams*, 81 Conn. App. 1, 20, 838 A.2d 214, cert. denied, 268 Conn. 904, 845 A.2d 409 (2004).

A

The defendant contends that the court improperly instructed the jury with respect to its charge on consciousness of guilt. The defendant raises several arguments regarding this issue. We disagree with the defendant and conclude that the instruction given by the court was proper.

The court provided the jury with the following instruction. "The law of our state recognizes a principle known as admission by conduct. Certain actions of a person may be considered by you to show a guilty knowledge or consciousness of guilt. When a person is on trial for a criminal offense, it is proper to show

his conduct subsequent to the alleged criminal offense, which fairly may have been influenced by the act. Flight may indicate consciousness of guilt if the facts and the circumstances support it.

"The state claims that the defendant fled from the scene of the crime immediately after the crime. There was also testimony that the police searched for the defendant and [that] the police located the defendant a number of years later in Philadelphia, Pennsylvania. If you find that the defendant did flee from the scene or did hide from the police following the commission of the crimes alleged, you may give such weight to that evidence which you decide is reasonable. Also, use of . . . an alias, subsequent to the alleged criminal offense may indicate consciousness of guilt if the facts and circumstances support it.

"The state claims that [the defendant] was apprehended in Pennsylvania under the name Edwin Acevedo. If you find that [the defendant] did use such a name following the commission of the crimes alleged, *you must give such weight to that evidence which you decide is reasonable.*" (Emphasis added.)

The defendant's brief initially was filed in our Supreme Court. He first requests a reconsideration[10] of the holding of *State* v. *Alston*, supra, 272 Conn. 432, that "instructions addressing *permissive* inferences are not of constitutional magnitude" and therefore are not reviewable under *Golding*. (Emphasis in original; internal quotation marks omitted.) Id., 448. It is axiomatic that "as an intermediate appellate court, it is not our role to overturn our Supreme Court's holdings," and we decline the defendant's request to do so. *State* v. *Tinsley*, 59 Conn. App. 4, 19 n.11, 755 A.2d 368, cert. denied, 254 Conn. 938, 761 A.2d 765 (2000). Accordingly,

---

[10] The defendant's claim was not preserved at trial for appellate review.

we decline the defendant's invitation to revisit the *Alston* holding.[11]

The defendant next argues that the court instructed the jury on a mandatory presumption. The defendant acknowledges that his claim was not preserved for our review and now requests both *Golding* and plain error review.[12]

"A claim challenging an instruction that mandates a particular inference adverse to a defendant may sufficiently implicate constitutional rights to satisfy the second condition of *Golding*, i.e., that the claim is of constitutional magnitude alleging the violation of a fundamental right . . . ." (Internal quotation marks omitted.) *State* v. *Orta*, 66 Conn. App. 783, 792, 786 A.2d 504 (2001), cert. denied, 259 Conn. 907, 789 A.2d 997 (2002). Because the record is adequate and this claim is of constitutional magnitude, we will review it under *Golding*. The defendant's claim, however, fails to satisfy the third *Golding* prong.

The defendant claims that the court's instruction that the jury *"must give such weight to that evidence"*; (emphasis added); created a mandatory presumption. "A mandatory presumption instructs the jury that it

---

[11] The defendant also argues that claims relating to consciousness of guilt instructions should be reviewed under a constitutional standard, rather than the abuse of discretion standard mandated by our Supreme Court in *State* v. *Scott*, 270 Conn. 92, 103–107, 851 A.2d 291 (2004), cert. denied, 544 U.S. 987, 125 S. Ct. 1861, 161 L. Ed. 2d 746 (2005); see also *State* v. *Hines*, 243 Conn. 796, 816, 709 A.2d 522 (1998). The defendant further contends that, under its inherent supervisory powers, our Supreme Court should prohibit the use of consciousness of guilt instructions. We recently have rejected this exact claim in *State* v. *Hernandez*, 91 Conn. App. 169, 177 n.10, 883 A.2d 1, cert. denied, 276 Conn. 912, 886 A.2d 426 (2005). As we have stated previously, it is not the province of this court to reconsider the holdings of our Supreme Court. Id.

[12] The defendant has not suffered "manifest injustice," and therefore plain error review is not warranted. *State* v. *Howard*, 88 Conn. App. 404, 414, 870 A.2d 8, cert. denied, 275 Conn. 917, 883 A.2d 1250 (2005); see also footnote 5.

*must* infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the jury that a possible conclusion *may* be drawn if the State proves predicate facts but does not require the jury to draw that conclusion.

"Mandatory presumptions . . . violate the Due Process Clause if they relieve the State of the burden of persuasion on an element of an offense. . . . A permissive inference does not relieve the State of its burden of persuasion because it still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved." (Emphasis in original; internal quotation marks omitted.) *State* v. *Francis*, 246 Conn. 339, 354, 717 A.2d 696 (1998).

Our Supreme Court has instructed that "[t]he pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . *Accordingly, [i]n reviewing a constitutional challenge to [a] trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Coltherst*, 263 Conn. 478, 490, 820 A.2d 1024 (2003).

In reviewing the charge as a whole, we conclude that it was not reasonably possible that use of the word "must" misled the jury. First, we note that "[w]e have recognized that when a court gives a lengthy jury instruction, a slip of the tongue may occasionally occur." (Internal quotation marks omitted.) *State* v. *Schiavo*, 93 Conn. App. 290, 298, 888 A.2d 1115, cert.

denied, 277 Conn. 923, 895 A.2d 797 (2006). The court instructed the jury on several occasions that it "may" consider the consciousness of guilt evidence against the defendant. It specifically instructed that the use of an alias *may* indicate consciousness of guilt. Moreover, in *State* v. *Williams*, 199 Conn. 30, 505 A.2d 699 (1986), our Supreme Court held that an isolated use of language creating a mandatory conclusion was not a constitutional violation. "We have carefully examined the whole charge and have concluded that additional language . . . was sufficient to rectify the improper use of the word 'must' and to prevent the jury from unconstitutionally relieving the state of its burden of persuasion on the element of intent." Id., 37. Similarly, in the present case, the court's charge, when read as a whole, did not reasonably mislead the jury by relieving the state of its burden of proving all of the elements of the crime charged. We conclude, therefore, that this claim fails to meet *Golding*'s third prong.

B

The defendant next argues that the court improperly instructed the jury as to reasonable doubt. Specifically, he challenges the propriety of the charge that reasonable doubt is "a real doubt, an honest doubt, a doubt which has its foundation in the evidence offered in the case or in the absence of evidence. It is a such a doubt as . . . would cause reasonable men and women to hesitate to act upon it in matters of importance."

We find the defendant's claim to be without merit. "Our Supreme Court already has held that a trial court may use [the challenged] language to explain reasonable doubt. See, e.g., *State* v. *Ferguson*, 260 Conn. 339, 371, 796 A.2d 1118 (2002) ([w]e consistently have held that the definition of reasonable doubt as a real doubt, an honest doubt, a doubt which has its foundation in the evidence or lack of evidence . . . and as a doubt which in the serious affairs which concern you in every

day life you would pay heed and attention to does not dilute the state's burden of proof when such definitions are viewed in the context of an entire charge [internal quotation marks omitted]); *State* v. *Griffin*, 253 Conn. 195, 206–207, 749 A.2d 1192 (2000) (our Supreme Court has approved a reasonable doubt instruction containing the statement that such a doubt is not a surmise, a guess or a conjecture; noting that United States Supreme Court has upheld explanation that reasonable doubt is doubt that would cause a reasonably prudent person to hesitate to act in matters of importance); *State* v. *Derrico*, 181 Conn. 151, 171 n.4, 434 A.2d 356 (finding no error in instruction to jury that reasonable doubt is not a surmise or a guess or a conjecture [internal quotation marks omitted]), cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980). [T]his court will not reexamine or reevaluate Supreme Court precedent. Whether a Supreme Court holding should be reevaluated and possibly discarded is not for this court to decide." (Internal quotation marks omitted.) *State* v. *Hernandez*, 91 Conn. App. 169, 178–79, 883 A.2d 1, cert. denied, 276 Conn. 912, 886 A.2d 426 (2005).

The judgment is affirmed.

In this opinion the other judges concurred.