# STATE OF CONNECTICUT *v.* JAMES P.[1]
## (AC 25902)

Bishop, DiPentima and West, Js.

Argued March 21—officially released June 13, 2006

---

[1] In accordance with our policy of protecting the privacy interests of the victims of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

*Stephanie L. Evans*, special public defender, for the appellant (defendant).

*Denise B. Smoker*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Brian J. Leslie*, assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. The defendant, James P., appeals from the judgment of conviction, rendered after a jury trial, of risk of injury to a child in violation of General Statutes § 53-21 (a) (1), assault in the third degree in violation of General Statutes § 53a-61 (a) (1) and disorderly conduct in violation of General Statutes § 53a-182 (a) (1).[2] On appeal, the defendant claims that the court improperly (1) denied his motion for a judgment of acquittal as to the charge of risk of injury to a child, (2) omitted from its charge to the jury essential elements of § 53-21 (a) (1)[3] and (3) denied his request to poll the jury. We disagree with the defendant's first claim, but agree that the court improperly denied his request to poll the jury and, therefore, reverse the judgment and remand the case for a new trial.[4]

---

[2] The jury found the defendant not guilty of a second charge of assault in the third degree in violation of § 53a-61 (a) (1).

[3] In its charge to the jury, the court discussed the elements contained in the first part of § 53-21 (a) (1), which refer to placing a child in a situation that is likely to impair that child's life or limb, health or morals rather than those contained in the second part of § 53-21 (a) (1), which refer to engaging in an act that is likely to impair a child's life or limb, health or morals.

[4] We do not consider the defendant's second claim because, although the court's charge to the jury admittedly was improper, it is unlikely to arise on retrial. We review the defendant's first claim under the rule announced by our Supreme Court in *State* v. *Padua*, 273 Conn. 138, 177–79, 869 A.2d 192 (2005) (en banc), which requires a reviewing court to address a defendant's

The jury reasonably could have found the following facts. On the afternoon of Sunday, September 14, 2003, the defendant, his wife, T, and their four year old son, J, were home together. The defendant and T began to argue because the defendant believed T was having an affair with another man. This argument continued through the evening and into the following day. Sometime during the evening of September 15, the defendant prepared a plate of food for J to have for dinner. As J was eating his dinner at the kitchen table, the defendant and T were arguing in their bedroom. The defendant left T in the bedroom several times to check on J's progress with his dinner. The defendant became angry with J because J had not finished eating all of the food that the defendant had put on his plate. The last time the defendant went to the kitchen to look in on J, he took a leather belt with him. When the defendant saw that J had not finished his food, he pulled J out of his chair and began beating him with the belt on his back and legs. This beating lasted for approximately five minutes. The defendant then told J to sit back down in his chair and to finish his food, but J instead vomited in his plate. The defendant then beat J with the belt again. The beating resulted in J's suffering two parallel, track like marks across his buttocks in addition to a small circular bruise on the back of his thigh.

On Tuesday, September 16, 2003, T reported the incident to the police. She waited until then to report the incident because the family did not have a telephone in their home, and T did not feel safe leaving the home while the defendant was there. After reporting the incident, T took J to a health center for treatment of his injuries.

sufficiency of the evidence claim when it is briefed properly and there is an adequate record for review; retrial due to trial error is barred if the defendant is entitled to an acquittal because there was insufficient evidence to support a verdict of guilty.

Trial commenced in June, 2004, and evidence was presented over a period of three days. The jury returned a verdict of guilty of assault in the third degree, risk of injury to a child and disorderly conduct. The jury returned a verdict of not guilty on the charge of assault in the third degree that related to the defendant's alleged conduct directed toward T. In August, 2004, the defendant was sentenced to a total effective term of ten years imprisonment, execution suspended after five years, and five years probation. This appeal followed.

I

We first address the defendant's claim that the court improperly denied his motion for a judgment of acquittal because there was insufficient evidence to support the verdict of guilty on the charge of risk of injury to a child in violation of § 53-21 (a) (1). In support of his claim, the defendant argues that the relevant evidence was not credible. Specifically, the defendant argues that the relevant evidence was offered through a witness whom the jury had deemed lacked credibility, as demonstrated by the defendant's acquittal on one of the assault charges. We disagree with the defendant that the court improperly denied his motion for a judgment of acquittal.

The following additional facts are necessary for our disposition of the defendant's claim. T testified that the argument in which she and the defendant engaged escalated into physical violence, with the defendant ultimately hitting her in the face with a closed fist three to four times in rapid succession. She stated that she suffered injuries, including a black eye, bloody nose and "busted lip" due to these blows. She also stated that the defendant repeatedly struck J on his bare back and legs with a belt for approximately five minutes. Other witnesses testified that they saw no indication that T had been punched or abused in any way. One

witness stated that she saw a small cut near T's right eye, but that she saw no swelling near or around the eye or bruising anywhere else on T's face. A medical expert witness testified that there were two parallel, track like marks on J's bottom and a small round bruise on his leg, and that there were no welts, cuts or open wounds anywhere on his body. J did not describe to the medical expert how he had sustained the marks, nor did he express to her that he was in any pain. The medical expert was informed about the nature of J's injuries by T. Additionally, when testifying about the abuse, T was unable to isolate the exact time and day of the incident, and indicated that she had not gone to the police sooner because the defendant was at home and she was afraid of him. Another witness, however, testified that the defendant was at work on the day that the abuse had occurred.

The defendant argues that the fact that the jury found him not guilty of the charge of assaulting T shows that the jury did not find T credible and that, therefore, there was no credible evidence to support his conviction for risk of injury to a child. We disagree.

"In reviewing a sufficiency [of the evidence] claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Ramirez*, 94 Conn. App. 812, 821, 894 A.2d 1032 (2006). "This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . . In conducting our review, we are mindful that the finding of facts, the gauging of witness credibility and the choosing among competing inferences are functions within the exclusive

province of the jury, and, therefore, we must afford those determinations great deference." (Citation omitted; internal quotation marks omitted.) *State* v. *Morocho*, 93 Conn. App. 205, 210, 888 A.2d 164, cert. denied, 277 Conn. 915, 895 A.2d 792 (2006).

The defendant's argument, although couched in the language of a sufficiency of the evidence claim, actually attacks the witness credibility determinations made by the jury in reaching its ultimate conclusions about the case. "Questions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses." (Internal quotation marks omitted.) *State* v. *Liborio A.*, 93 Conn. App. 279, 284, 889 A.2d 821 (2006). "Inconsistencies in testimony and witness credibility are matters that are within the exclusive purview of the jury to resolve at trial." (Internal quotation marks omitted.) *State* v. *Jones*, 92 Conn. App. 1, 11, 882 A.2d 1277 (2005).

Reviewing the evidence in the light most favorable to sustaining the verdict includes crediting T's testimony about the beating J suffered at the hands of the defendant. Viewed in this light, it is unquestionable that sufficient evidence existed to convict the defendant of risk of injury to a child in violation of § 53-21 (a) (1). The defendant's claim, therefore, fails.

## II

The defendant also claims that the court improperly denied his request to poll the jury. In making his claim, the defendant relies on our Supreme Court's decision in *State* v. *Pare*, 253 Conn. 611, 755 A.2d 180 (2000), in which it held that "pursuant to [Practice Book] § 42-31, a trial court's obligation to poll the jury upon a timely request from either party is mandatory"; id., 621; and that a violation of that rule of practice "requires automatic reversal of the judgment." Id., 639. The state

does not contest the ultimate holding of *Pare*, but rather argues that, in this instance, the defendant's request to poll the jury was not timely and, therefore, the court's refusal of that request did not constitute a violation of Practice Book § 42-31.[5]

The following additional facts are necessary for our resolution of the defendant's claim. After the jury had been escorted into the courtroom and had announced its verdict, the court clerk asked the jury collectively whether "each of you do say unanimously that the defendant is guilty of the crime of risk of injury . . . not guilty of the crime of assault in the third degree . . . guilty of the crime of assault in the third degree . . . [and] guilty of the crime of disorderly conduct . . . ." The jury collectively responded, "Yes." The court then stated: "The record shall reflect that the jury has unanimously assented to the verdicts as announced by the foreperson." The court continued: "It's my responsibility to excuse all of you, *but before I do*, I'd like to have the opportunity to spend a couple of minutes with you in the jury deliberation room. I have to attend to something on the record . . . and following that, I'll take a brief recess and speak with all of you. My clerk will also be delivering some documents to you. . . . If you would kindly return to the jury deliberation room at this time." (Emphasis added.) The court then considered the state's and the defendant's requests concerning his bond, ordered a presentence investigation and scheduled the sentencing hearing. As the court ordered a brief recess to allow the court to talk briefly with the jury, defense counsel stated: "Before we recess, Your Honor, there is a matter. I would like to poll the jury." The court responded: "[Y]ou should have done that when they were out here, sir. It's too late. It

---

[5] Practice Book § 42-31 provides in relevant part: "After a verdict has been returned and before the jury [has] been discharged, the jury shall be polled at the request of any party or upon the judicial authority's own motion. . . ."

[has] been accepted. It's recorded. I've also stated on the record that they've assented unanimously. The request is denied." The court then took a recess.

Our review of the defendant's claim necessarily includes consideration of what qualifies as a *timely* request to poll the jury.[6] A request to poll the jury is timely within the parameters of Practice Book § 42-31 if it is submitted prior to the jury's discharge. "[T]he discharge of a jury is not triggered by its departure from the courtroom, but, rather, by the separation and dispersal of its individual members." *State* v. *Pare,* supra, 253 Conn. 629–30. Prior to the time jurors separate and disperse, they are unlikely to come into contact with outside influences that could taint any subsequent poll. Id., 632.

The state argues that the defendant has not shown that the jurors here were not tainted by outside influences. Specifically, the state posits that the defendant should have supplemented the record, such as by questioning each juror about his or her activities after leaving the courtroom, so as to meet his burden of proving that the jurors were not tainted after the initial reading of the verdict. Our Supreme Court in *Pare,* however, did not place that burden on the defendant. It stated: "Until [the jurors separate and disperse] *it can be assumed, in the absence of any indication to the contrary,* that the deliberative process had not been tainted and, therefore, that the results of a jury poll will provide adequate confirmation as to whether the verdict was reached upon full consensus of the jurors." (Emphasis added.) Id., 633. In reaching our decision, therefore, our focus remains on whether the jury had dispersed and separated at the time that defense counsel requested to poll the jury.

---

[6] "Failure to make a timely demand or request for a poll, where there has been reasonable opportunity to do so, operates as a waiver of the right." (Internal quotation marks omitted.) *State* v. *Pare,* supra, 253 Conn. 627.

In determining whether, on the record of this case, the jury had dispersed and separated so that the jurors were discharged within the meaning of Practice Book § 42-31, we need look no further than our Supreme Court's decision in *Pare*. Although other cases have discussed the timeliness of a request to poll; see *State* v. *Edelman*, 64 Conn. App. 480, 482–84, 780 A.2d 980 (2001), appeal dismissed, 262 Conn. 392, 815 A.2d 104 (2003); or the definition of when a jury is "discharged"; see *State* v. *Colon*, 272 Conn. 106, 281–87, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005); *State* v. *Murray*, 254 Conn. 472, 495–96, 757 A.2d 578 (2000); we conclude that the relevant facts of *Pare* are virtually indistinguishable from the facts of this case.

In *Pare*, the court instructed the jury: "The jury can retire now and if you wait for a moment, I'll be in to speak to you very shortly." (Internal quotation marks omitted.) *State* v. *Pare*, supra, 253 Conn. 619. Likewise, in this case, the court instructed the jurors to return to the deliberation room and wait for the court to dismiss them. Although, as the state argues, defense counsel in *Pare* immediately requested to poll the jury once the last juror had left the courtroom, this was not the deciding factor in our Supreme Court's decision. Rather, our Supreme Court stated: "Following the announcement of the verdict, the judge expressly instructed the members of the jury to retire to the jury room and await his arrival." Id., 634. As in *Pare*, "[t]here is no indication in the record that the jury disregarded that instruction." Id.

We conclude, therefore, in accordance with our Supreme Court's decision in *Pare*, that "[p]articularly when . . . the trial court effectively informs the members of the jury that, upon departing from the courtroom, they nonetheless remain under the supervisory authority of the trial court, it cannot be said that the jury is discharged under the common understanding of

that term." Id., 629. Because the jury was not discharged, defense counsel's request to poll the jury was timely, and the court's improper denial of that request requires reversal of the judgment.[7]

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

[7] In *Pare*, our Supreme Court considered timeliness only in regard to whether the jury had been discharged. Specifically, the court stated: "[I]f the trial court must conduct the poll after the verdict is returned but before the jury is discharged, then a request to poll necessarily must be made prior to the expiration of that period." *State* v. *Pare*, supra, 253 Conn. 628. This definition of timeliness controls. Although we recognize that defense counsel's request was not made immediately following the removal of the jury from the courtroom but rather followed a discussion between counsel and the court regarding bond and a schedule for sentencing, it was made within the operative time period as set forth in *Pare*. We suggest that a more opportune time for counsel to make a request to poll the jury would be directly following its announcement of the verdict with the additional option, as indicated in *Pare*, of notifying the court of the anticipated request prior to the jury's announcement of the verdict. Id., 627–28.