STATE OF CONNECTICUT *v.* DAVID O.[1]
(AC 27617)

Bishop, Harper and Dupont, Js.

___

[1] In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

Argued September 19—officially released December 11, 2007

*Michael Zariphes*, special public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, *James E. Thomas*, former state's attorney, and *Anne F. Mahoney*, senior assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, David O., appeals from the judgment of conviction, rendered following a jury trial, of two counts of risk of injury to a child in violation

of General Statutes § 53-21 (a) (1).[2] The defendant claims that prosecutorial impropriety during closing argument deprived him of a fair trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The victim is the defendant's daughter and, at the time of the incident underlying this appeal, was five months old. During the morning hours of March 25, 2004, the victim's mother, who was the defendant's girlfriend at the time, left her residence that she shared with the defendant, the victim and others, to go to work. While caring for the victim sometime during the early afternoon, the defendant caused the victim to sustain bodily injury. The defendant did not provide any treatment for the victim or summon any medical assistance on her behalf. When the victim's mother returned home that evening, she became alarmed at the victim's physical appearance, specifically, numerous marks and bruises about her face and body that were not present when she had last seen the victim earlier that day.

After the victim's mother decided to obtain medical assistance for the victim, the defendant drove the victim and her mother to a nearby hospital where the victim underwent medical evaluation and treatment. John Peng, a treating physician at the hospital, who was board certified in pediatrics and pediatric emergency medicine, testified that he observed bruises on the victim's face, chest, arms and legs; some of the bruises appeared to have been made by "three fingers." Peng related that, apart from the victim's visible injuries,

[2] The court sentenced the defendant to a total effective term of incarceration of five years. The state also charged the defendant with one count of intentional assault in the first degree and one count of reckless assault in the first degree. The jury returned a not guilty verdict with regard to the intentional assault count. The court declared a mistrial on the reckless assault count after the jury was unable to reach a unanimous verdict as to that count, and the state subsequently entered a nolle prosequi on that count.

tests revealed a significant likelihood of trauma to the victim's liver. Peng described the injuries as "probably . . . the worst bruising that [he had] seen on a child."

During the course of the evening, the police were notified of the incident, and a police officer arrived at the hospital to investigate the case. The defendant later provided a written statement to the police in which he provided his explanation for the victim's condition. The defendant stated therein that, at approximately one o'clock that afternoon, he attempted to soothe the victim, who was crying, by placing her in a stroller. The defendant also stated: "Before putting [the victim] in the stroller, I had [a] bottle in my left hand and [the victim] on the other. [The victim] threw herself backwards and she fell out of my hands and hit the wall but did not touch the floor. I held [the victim] against the wall . . . holding [her] legs. I saw one small line when the chest touched the wall and [her] little face was changing colors when she stumbled, she was scratched. . . . [The victim] pushed herself very hard against the [wall. The] wall is very [hard; it] has a lot of concrete. It is true that I held [the victim's face] against the wall but it was so she wouldn't fall. There was a piece of furniture that I did not want her to fall onto. I got nervous [and] felt sorry for my daughter." The defendant further stated that he comforted the victim and that she subsequently took a nap. The defendant acknowledged that he had not related these events to his girlfriend, the victim's mother, and characterized the incident as "an accident."

The defendant claims that prosecutorial impropriety occurred in two ways. First, he alleges that during both her initial and rebuttal arguments, the prosecutor, in violation of a clearly expressed ruling by the court, improperly instructed the jury on the law. Second, he alleges that during her initial and rebuttal arguments, the prosecutor improperly appealed to the emotions of

the jurors. We will analyze separately each aspect of the defendant's claim.

## I

Prior to the start of closing arguments by both parties, the court ruled that the attorneys were "not to instruct the jury on the law" during their arguments. The court provided the following example: "[T]he parties could mention principles of law, for instance, serious physical injury, and indicate to the jurors what facts they can rely on to find that there is serious physical injury and what facts they can rely on to find that there was not . . . serious physical injury. But they are not to instruct the jury on the definition of any legal principle, for example, serious physical injury." The defendant's attorney objected to the court's ruling, arguing that it hampered his ability to discuss the "intersection between the law and the facts of this case." The court noted the objection.

During her initial closing argument, the prosecutor argued in relevant part: "If you find that [the defendant] injured [the victim] in such a way that it was a serious physical injury to her liver, that he intended to do so, he intended to injure her, and that he caused the injury, you should find him guilty of . . . assault in the first degree.

"If you find that he failed to bring her to the hospital, even though he knew she was injured, failed to get her any treatment, failed to provide any treatment himself, you should find him guilty of the risk of injury in count three.

"If you find that he did an act likely to impair the health of the child, who was under sixteen years of age, by this, you should find him guilty of count four.

"The state is not required to prove a motive in this case. Would it be helpful if I could say to you, I know

why he did this? Sure. When you have a larceny case it helps if you, you know—common sense tells you why people steal. But the state is not required to prove— when you listen to the judge's instructions about what the elements are, motive won't be one of the elements.

"The state is also not required to prove that any of these injuries were permanent, nor that they were— that they did, in fact, cause a risk of death . . . . In order for you to find serious physical injury, if there were life threatening injury, you can consider that.

"You will get a definition from the judge about what a serious physical injury is."

Later, during the state's rebuttal argument, the prosecutor argued in relevant part: "With regard to the serious physical injury, you have the injury both to the liver and also to her skin. And it's up to you to conclude— [the defendant's attorney] said —there's no testimony about life threatening illnesses. You're going to hear from the judge what the definition of a serious physical injury is, and listen to the entire definition. I believe that you'll have a copy of the instructions with you when you go back into the jury room. But if you listen carefully to what the judge has instructed you, you will find that the injury to the liver and the injury to the skin does, in fact, qualify as a serious physical injury. The question for you, then, becomes, was it intentional or was it reckless? And if it was reckless, was it as such [an] extreme level of recklessness?

"The state submits to you that you could find either one of those things here based upon the evidence that you have. And the coverup is the indication, the consciousness of guilt of not telling what happened here, is the evidence that you can use from the circumstantial evidence that this child was left with him; he and the mother both agree she's fine in the morning and yet . . . when the mother comes home from work at the

end of the day, she's no longer fine. So, you look at the direct evidence, you look at the circumstantial evidence, and you're allowed to draw reasonable inferences from that evidence."

After the prosecutor concluded her argument, the jury left the courtroom, and the court addressed the prosecutor as follows: "You said, many times, you don't have to find that, you have to find that. And then you even put up a note about you don't have to prove motive, permanent injury, you don't have to prove that the victim was in risk of death. That's exactly what I told you not to do. . . . [I]t is confusing to the jury to do that. That's exactly why I don't allow such statements. . . . I'm not going to mention motive at all. That's not, I believe, in the court's instruction." The prosecutor apologized to the court, noting that she did not believe she had violated its ruling and had not intended to do so. The court stated, "I think you didn't intend to, but you did."

The defendant's attorney thereafter moved for a mistrial on the ground that the prosecutor had violated the court's ruling and that the court's ruling unfairly restricted the argument of both parties. The court denied the motion on the ground that the prosecutor's arguments, despite having "cross[ed] the line," had not resulted in any advantage to the state. The court noted that, at the beginning of its charge, it would instruct the jury that it was to follow its instructions on the law and to disregard any statements concerning the law that had been made by the attorneys.[3]

The defendant claims that this court should invoke its supervisory authority, reverse the judgment and

---

[3] Moments later, the court summoned the jury to the courtroom and began its charge as follows: "[B]efore I start, I just want to tell you that what any lawyer said about the law in this case is to be disregarded by you. You are to listen to my instructions and apply the law that I give you and only the law that I give you."

remand the case for a new trial because the prosecutor engaged in deliberate impropriety by instructing the jury on matters of law in violation of the court's ruling concerning the content of argument. "[A] prosecutor may not make an argument in violation of a court ruling. . . . [I]n considering claims of prosecutorial misconduct, we apply a due process analysis and consider whether the defendant was deprived of a fair trial. . . . A different standard is applied, however, when the claim involves deliberate prosecutorial misconduct during trial which violates express court rulings . . . . When such an allegation has been made, we must determine whether the challenged argument was unduly offensive to the maintenance of a sound judicial process. . . . If we answer that question in the affirmative, we may invoke our supervisory powers to reverse the defendant's conviction. . . . In determining whether the use of our supervisory powers to reverse a conviction is appropriate, we consider whether the effect of the challenged remark was to undermine the authority of the trial court's ruling . . . . We also consider the degree of prejudice suffered by the defendant as a result of the remark. . . .

"Our Supreme Court . . . has urged a cautionary approach in this regard, noting that [r]eversal of a conviction under our supervisory powers . . . should not be undertaken without balancing all of the interests involved: the extent of prejudice to the defendant; the emotional trauma to the victims or others likely to result from reliving their experiences at a new trial; the practical problems of memory loss and unavailability of witnesses after much time has elapsed; and the availability of other sanctions for such misconduct." (Citations omitted; internal quotation marks omitted.) *State* v. *Downing*, 68 Conn. App. 388, 403–404, 791 A.2d 649, cert. denied, 260 Conn. 920, 797 A.2d 518 (2002).

In *State* v. *Ubaldi*, 190 Conn. 559, 462 A.2d 1001, cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983), our Supreme Court first enunciated the principles relevant to claims of deliberate prosecutorial impropriety in violation of a trial court's ruling. Our Supreme Court held that, where such impropriety has occurred, an appellate court may exercise its "inherent supervisory authority over the administration of justice" to "defend the integrity of the judicial system." (Internal quotation marks omitted.) Id., 568, 570. The court blatantly rejected the argument that it could upset a criminal conviction on account of prosecutorial impropriety only where such conduct had deprived the defendant of his constitutional right to a fair trial. Id., 568. Instead, the court recognized that, given the proper circumstances and regardless of whether deliberate impropriety deprived a defendant of a fair trial, the "drastic step" of upsetting a criminal conviction might be necessary to "deter conduct undermining the integrity of the judicial system." (Internal quotation marks omitted.) Id., 571–72. Thus, after weighing relevant considerations, the court placed a primacy upon its responsibility "for the enforcement of court rules in prosecutorial misconduct cases" and for preventing "assaults on the integrity of the tribunal." Id., 571, 575. The court reasoned that it had an obligation to deter purposeful impropriety and concluded that reversal in cases involving such deliberate conduct may be warranted even where "a new trial is not constitutionally mandated." Id., 571. Hence, the touchstone of our analysis in a claim of this nature is not the fairness of the trial but the existence of misconduct that deliberately circumvents trial court rulings. See, e.g., *State* v. *Fullwood*, 194 Conn. 573, 584, 484 A.2d 435 (1984).

The record reflects the court's assessment of the alleged impropriety. The court crafted a unique ruling concerning the content of closing argument and, thus,

had a superior vantage point from which to assess whether the prosecutor deliberately had violated that ruling. Also, having presided over the trial, the court had a superior vantage point from which to assess the argument's likely effect on the jury and whether it inured to the defendant's detriment. Thus, we look with interest on the court's primary determination as to whether the prosecutor's argument was a flagrant or deliberate violation of that ruling, one that was "unduly offensive to the maintenance of a sound judicial process," or whether the prosecutor made a minor transgression, of little or no significance at trial. The court found that although the prosecutor had transgressed its ruling, the transgression was not intentional. The court further determined that the challenged argument had not in any way benefited the state and denied the defendant's motion for a mistrial on that ground. The tenor and substance of the court's remarks reflect that the court viewed the incident as a noteworthy, yet minor, unintended transgression, one that had not unfairly prejudiced the defendant.

There is no basis on which to call into doubt the correctness of the court's finding that the prosecutor had not deliberately violated its ruling. Although the prosecutor attempted to explain generally how the state met its burden with regard to the elements of the crimes, the arguments do not reflect an attempt by the prosecutor to define legal principles. Our review of the statements at issue, and the prosecutor's argument generally, reflects that the prosecutor deferred to the court's role as lawgiver to the jury, often reminding the jury to follow the court's legal instructions. Thus, this case does not concern deliberate or purposeful prosecutorial impropriety.

Having concluded that the effect of the prosecutor's remarks was not to undermine the trial court's authority, we next consider whether the degree of prejudice

to the defendant, if any, caused by the remarks warrants reversal of the conviction. We conclude that the court's determination that there had been no prejudice suffered by the defendant as a result of the prosecutor's argument is sound. The court, referring generally to the prosecutor's references to what facts the state must prove, did not appear to single out every argument by the prosecutor that it deemed objectionable. The court, however, singled out the prosecutor's references to motive, permanent injury and risk of death. As did the parties in their briefs, we have set forth the arguments that appear to be at issue. Insofar as the court took issue with the prosecutor's arguments concerning "permanent physical injury," we note that these arguments were relevant only with regard to the two assault charges. The defendant was not convicted of these charges; see footnote 2; and, thus, these arguments were not prejudicial to him. Insofar as the prosecutor's arguments with regard to the risk of injury counts, or with regard to principles (such as motive or consciousness of guilt) that applied generally to all of the charges against him, violated the spirit or letter of the court's ruling, we are not persuaded that they were in any way prejudicial to the defendant.

This is not a situation, for example, in which a prosecutor, in violation of an express ruling, referred in argument to highly prejudicial matters that were not in evidence and, thus, not before the jury. In the present case, the prosecutor's transgression apparently concerned her reference to the elements of the crimes of which the defendant stood charged and what the state needed and did not need to prove to obtain a conviction. Although the court perceived a minimal degree of impropriety, there is no basis on which to conclude that the prosecutor's isolated references to matters of law in any way prejudiced the defendant.[4] To the extent

[4] The defendant asserts that the impropriety was advantageous to the state because the improper argument related to critical issues in the case,

that the defendant argues that the prosecutor misled the jury with regard to the law or, specifically, the elements of the crimes at issue, we are mindful that, after the prosecutor concluded her rebuttal closing argument, the court immediately instructed the jury to disregard legal instructions from counsel and that its instructions with regard to the law were controlling. The court unambiguously reiterated this instruction in substance during its charge. "[T]he jury [is] presumed to follow the court's directions in the absence of a clear indication to the contrary." (Internal quotation marks omitted.) *State* v. *Flowers*, 278 Conn. 533, 547, 898 A.2d 789 (2006).

In light of the nature of the impropriety at issue, as well as our conclusion that the impropriety did not in any way affect the fairness of the trial, we decline to exercise our supervisory authority to reverse the defendant's conviction.

## II

During the state's principal closing argument, the prosecutor, while summarizing the testimony of several witnesses, stated: "You . . . heard from Dr. Peng, who testified about the material that you have, the medical records, how he treated the child, that, in fact, the baby was treated with morphine because the pain she was suffering was so strong." During the state's rebuttal argument, the prosecutor stated in relevant part: "With regard to count number four, that [the defendant] did an act that caused [the victim] physical injury, that it was not accidental, that it was purposeful. Why did he do this to a five month old, I cannot tell you that. It is hard to accept that anyone would injure a child."

---

the prosecutor improperly raised issues such as motive and consciousness of guilt, the prosecutor "was able to argue instructions of law to the jury and the defense was not," the prosecutor "reinforced" its "version of the law to the jury," and, generally, the prosecutor "confused the jury."

The defendant claims that these arguments improperly "inflamed" the jury's emotions against him in an effort by the prosecutor to distract the jury from considering the evidence. The defendant also claims that reference to the victim's degree of pain was not based on the evidence.[5] The defendant did not preserve these claims, yet we will afford them review nonetheless pursuant to *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). See *State* v. *Stevenson*, 269 Conn. 563, 572–74, 849 A.2d 626 (2004). "In analyzing claims of prosecutorial [impropriety], we engage in a two step analytical process. The two steps are separate and distinct: (1) whether [impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived a defendant of his due process right to a fair trial. . . . Only if we conclude that prosecutorial [impropriety] has occurred do we then determine whether the defendant was deprived of his due process right to a fair trial." (Citation omitted; internal quotation marks omitted.) *State* v. *Gordon*, 104 Conn. App. 69, 73, 931 A.2d 939, cert. denied, 284 Conn. 937, 937 A.2d 695 (2007).

"It is well settled that [a] prosecutor may not appeal to the emotions, passions and prejudices of the jurors. . . . When the prosecutor appeals to emotions, he invites the jury to decide the case, not according to a rational appraisal of the evidence, but on the basis of powerful and irrelevant factors which are likely to skew

---

[5] To a lesser extent, the defendant also claims that, by these arguments, the prosecutor essentially presumed his guilt and, thus, deprived him of a fair trial. This aspect of the defendant's claim lacks merit. The defendant suggests that the prosecutor "convict[ed] him in advance" by asking rhetorically why he had engaged in the conduct alleged. The prosecutor was not precluded from interpreting the evidence elicited consistent with a finding of guilt. These arguments do not reflect that the prosecutor improperly expressed a personal belief in his guilt but one that was wholly connected to the evidence presented at trial and, thus, was not improper. See *State* v. *Swain*, 101 Conn. App. 253, 278–79, 921 A.2d 712, cert. denied, 283 Conn. 909, 928 A.2d 539 (2007).

that appraisal. . . . Therefore, a prosecutor may argue the state's case forcefully, [but] such argument must be fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom. . . . Nevertheless, [w]hen making closing arguments to the jury . . . [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument." (Internal quotation marks omitted.) *State* v. *Farr*, 98 Conn. App. 93, 107–108, 908 A.2d 556 (2006).

As a preliminary matter, we disagree that the argument concerning the fact that the victim was in pain was not based on the evidence or the reasonable inferences to be drawn from the evidence. The jury had before it ample evidence concerning the nature and extent of the victim's injuries. The defendant, in his statement to the police, stated that the victim had fallen from his hands and made forceful contact with a concrete wall and that he had held her face against the wall so that she would not fall to the ground. The victim's mother testified that when she observed the victim upon returning home from work on March 25, 2004, the victim appeared to be in pain. The victim's mother also testified that when the victim was touched that evening, her reaction reflected that she was in pain. Carlos Ocasio, an officer with the Hartford police department, spent time with the victim upon her arrival at the hospital as part of his investigation of this case. Ocasio testified that the victim was crying while he photographed her. Photographs of the victim's injuries and various medical records related to the injuries were in evidence. Further, Peng testified that the victim received "both [intravenous] fluids and morphine" at the hospital. Peng explained that "the morphine was to treat pain."

For obvious reasons, the state was unable to present direct testimony from the victim, who was five months old on the date of this incident, that she had experienced the sensation of pain. "[T]he prosecutor had the prerogative to invite the jury to draw reasonable inferences from the facts in evidence and could argue on the basis of such inferences. In so doing, the prosecutor does no more than invite the jury to apply the common sense that we expect it to bring to its deliberations." *State* v. *Swain*, 101 Conn. App. 253, 272, 921 A.2d 712, cert. denied, 283 Conn. 909, 928 A.2d 539 (2007). It was entirely consistent with a rational view of the evidence to state as a fact proven, as did the prosecutor, that the victim had experienced pain. Peng's testimony that at the hospital the victim had been administered morphine, an opiate commonly understood to relieve severe pain, unquestionably provided a reasonable factual predicate for the prosecutor's argument that the victim had been treated with morphine and that she was administered such substance because her pain was strong enough to warrant its use.

The defendant does not justify clearly his claim that the prosecutor improperly aroused the emotions of the jury. He merely asserts that the prosecutor's reference to evidence that the victim was in pain was improper. Similarly, he argues that the prosecutor's observations that there was no explanation as to why he purposefully would have harmed the victim and that it was "hard to accept" such conduct were inherently prejudicial.

The prosecutor was well within the bounds of appropriate argument to refer to the fact that the victim was in pain. We already have concluded that this was a fact amply supported by the evidence. It was also a material fact because, if the victim experienced pain, it helped to substantiate the state's allegation that the defendant caused her physical harm and that she was in need of medical care. Accordingly, this fact was fodder for the

prosecutor's argument. We recognize that evidence of this type, in a case involving harm to a victim of a tender age, has an inherent tendency to arouse the emotions of the jury. The context in which the prosecutor referred to this fact, however, reflects that she did not refer to the fact for an improper purpose. The prosecutor referred to the victim's pain in the limited context of summarizing the evidence concerning the extent of the victim's injuries. Thus, we find no merit to the defendant's claim in this regard.

Furthermore, the record does not reflect that the prosecutor's argument that the defendant purposefully had harmed the victim was an expression of personal opinion or an improper attempt to arouse the jury's emotions. During his closing argument, the defendant's attorney argued that the victim's injuries were caused accidentally. The defendant's attorney also discussed photographs in evidence that depicted the victim's injury. He characterized this evidence as follows: "Those pictures [show] a cute little five month old baby there with ugly bruises. Those are ugly—it's an ugly, ugly thing to look at." During her rebuttal argument, the prosecutor challenged the argument that the injuries were accidental and attempted to persuade the jury that the defendant wrongfully neglected to aid the victim. The prosecutor properly argued from the evidence that the defendant had purposefully harmed the victim and risked injury by failing to care for her injuries. Likewise, that the prosecutor deemed such conduct "hard to accept" was not inherently prejudicial. It was the prosecutor's province to attempt to explain reasonably the evidence of the defendant's conduct and the jury's task to draw inferences from the evidence of that conduct. That the prosecutor would refer to the type of criminal conduct at issue as "hard to accept" was both entirely consistent with the tone struck by the defendant's attorney during closing argument as he

referred to graphic evidence of the victim's physical abuse and, in the heat of argument, not an instance of impropriety.

The judgment is affirmed.

In this opinion the other judges concurred.